O’Neill, J.
{¶ 1} In this case, we consider whether unvested military retirement benefits are assets to be considered in a divorce property division. While there is always a degree of uncertainty regarding the precise value of such benefits, it is beyond dispute that they do have value, even if that value will become fixed only in the future. Accordingly, a trial court must take such benefits into account when determining a division of property.
FACTS AND PROCEDURAL HISTORY
{¶ 2} Plaintiff, Christen Daniel, and defendant, Sean Daniel, were married in 1995. The marriage produced three children, who were aged 13, 11, and 7 at the time of the divorce hearing. During the marriage, the parties separated on two occasions: from fall 2004 until December 2005 and from January 2008 through the date of the divorce decree in 2011.
{¶ 3} The defendant enlisted in the National Guard just prior to the marriage, and at the time of the divorce hearing had been in the Guard for 16 years. Prior to the hearing, he reenlisted for an additional six years, and he will be eligible to receive retirement benefits once he accumulates 20 years of credit. The parties entered into an agreement regarding custody of the three children, so their divorce trial related only to the division of property and debt.
*276 {¶ 4} The matter was heard by a magistrate, who concluded that “Ohio law does not permit the court to divide a non-vested pension benefit.” The plaintiff objected to this finding, arguing that “since the Defendant is already contractually committed to remain in the military through vesting ‘age’, the court should have divided one-half of his retirement benefits during the years of marriage.” The plaintiff contended that the court erred in concluding that unvested military benefits cannot be divided and that the court should have divided those benefits by computing the ratio of the number of years of the defendant’s military service during the marriage to the total years of his military service. The trial court overruled the plaintiffs objection and adopted the magistrate’s decision. In its final order, the trial court found that the defendant’s military retirement benefits were a “mere expectancy” and concluded that there were “no retirement benefits for the court to divide.”
{¶ 5} The court of appeals affirmed this decision, even though it implied that the trial court’s analysis might have been incorrect. The majority concluded that there was no need to decide whether unvested pension benefits are a marital asset, because insufficient evidence regarding Sean’s retirement benefits was presented at trial in this case to require division of the asset. But a separate opinion dissenting on this point observed that in this case, “the potential military pension is the only marital asset that the parties may have,” and for that reason, “an exact valuation or further details concerning the plan was not necessary in order for the court to provide for the future division of this asset.” (Emphasis sic.) 2012-Ohio-5129, 2012 WL 5397178, ¶ 61 (Willamowski, J., concurring in part and dissenting in part). “[T]he trial court had before it all of the information that was needed in order to award Christen one half of the amount of any future military pension that was attributable to the points that were earned during the marriage.” Id. at ¶ 64. The plaintiff appealed, and this court accepted jurisdiction to determine whether unvested military retirement benefits are marital assets subject to division in divorce proceedings.
{¶ 6} We agree with the dissent in the court of appeals’ decision. While the exact amount to be divided is not ascertainable unless and, until the service member completes the required 20 years of service, the percentage of ownership of the benefits on the date of divorce can readily be discerned. It is simple math: the number of years in service compared to the number of years of marriage provides the formula for division.
ANALYSIS
{¶ 7} In any divorce action, the starting point for a trial court’s analysis is an equal division of marital property. R.C. 3105.171(C)(1); Neville v. Neville, 99 *277 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5. Although the trial court was not specific on this point, it concluded, in essence, that because the defendant’s military retirement benefits had not vested, they were not marital property and were therefore not subject to division. We disagree.
{¶ 8} As defined in R.C. 3105.171(3)(a), “marital property” includes “[a]ll real and personal property that currently is owned by either or both of the spouses” and “[a]ll interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage.” (Emphasis added.) R.C. 3105.171(A)(3)(a)(i) and (ii).
{¶ 9} The statute does not distinguish between vested or unvested retirement benefits. The portion of the statute that sets forth what is not to be considered marital property does not mention retirement benefits at all. R.C. 3105.171(A)(3)(b). We have held that vested pension benefits are marital property. Hoyt v. Hoyt, 53 Ohio St.3d 177, 178-179, 559 N.E.2d 1292 (1990). But we have never addressed unvested benefits in this context.
{¶ 10} Admittedly, it may be difficult to ascertain the value of benefits that have not yet vested and may never vest. But it does not follow that those future benefits have no value. Most states hold that unvested retirement benefits accrued during the marriage constitute marital property subject to division. See Cohen v. Cohen, 937 S.W.2d 823, 829 (Tenn.1996) (listing cases from 37 states).
{¶ 11} In addressing the division of pension benefits, courts have fashioned two approaches: the “present cash value” method, which requires the court to place a value on the benefit as of the date of the final decree and divide that value between the parties, and the “deferred distribution” method, in which the court devises a formula for dividing the monthly benefit at the time of the decree, but defers distribution until the benefits become payable. Cohen at 831; see also Hoyt at 181.
{¶ 12} Our holding in Wilson v. Wilson, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, provides a useful example of the “deferred distribution” method of accomplishing an equitable division of an unvested retirement benefit. The trial court in that case included in the divorce decree the following language: “The defendant shall receive one-half of the coverture value of the plaintiffs unvested Teamsters pension if and when it becomes vested. This division shall be through a qualified domestic relations order (QDRO) prepared and signed at the time of the vesting.”[1] Id. at ¶ 3.
*278 {¶ 13} Similarly, in Hoyt this court approved the division of a vested but unmatured pension benefit by the use of a qualified domestic-relations order, but rejected the claim that the trial court must always use the present vested value of a plan in reaching its division of property. Id., 53 Ohio St.3d at 183-184, 559 N.E.2d 1292. We identified the two goals that trial courts must balance when dividing pension assets. “[WJhen circumstances permit, [trial courts] should strive to resolve the issues between the parties so as to disassociate the parties from one another or at least minimize their economic partnership.” Id. at 182. But “the trial court must obtain a result which will preserve the asset so that each party can procure the most benefit.” Id. at 181. And we recognized that in some situations, achieving the latter goal may mean that the former must yield:
When a trial court decides that a pension or retirement asset shall be paid by deferred distribution, it has created a situation where the parties’ affairs are not concluded. * * * Although this alternative divides the risk between the parties that the benefits will fail to vest or mature, as an example, there is nothing to prevent an employed spouse, for whatever reason, from quitting his or her employment and becoming employed elsewhere. Likewise, the nonemployed spouse bears the risk that the employed spouse will die and the expected benefits, before being vested or matured, will terminate.
Id. at 182. Hoyt recognizes that while it is desirable to bring finality to the parties’ marriage by dividing assets once and for all, doing so is not possible in all cases, because it sometimes leads to an inequitable result. And while the dollar amount in all likelihood will change as retirement approaches, the percentage interest of the parties in the pension will not.
{¶ 14} The appellate court seems to have understood that the defendant’s unvested retirement benefit was marital property under the statute, but then concluded that since the precise value of the benefit could not be ascertained based on the record presented, it could not be divided. But fixing a precise present value and the date of vesting is not mandatory. See Hoyt at 182; Wilson, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, at ¶ 19-20; Neville, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, at ¶ 10-11. And in the case of such an important asset, a court can and should seek other reasonable methods of achieving equity. As we noted in Hoyt, “[w]hen the only marital asset of the *279 parties is an employed spouse’s pension or retirement benefits, it is difficult for the trial court to structure an equitable property division without dividing the pension or retirement asset.” Hoyt at 183.
{¶ 15} As the plaintiff notes, one possible way to divide such assets is by computing “the ratio of the number of years of [the] employed spouse’s employment during the marriage to the total number of years of his or her employment,” id., a ratio that has come to be known as the “coverture fraction.” See, e.g., Thompson v. Thompson, 196 Ohio App.3d 764, 2011-Ohio-6286, 965 N.E.2d 377, ¶ 33. In this case, the trial court was provided with all of the information needed to calculate the coverture fraction: the dates of the marriage, the dates of defendant’s military service, and the dates the two overlapped. This is all that was necessary to award the plaintiff a percentage share of the defendant’s military retirement benefit. The fact that its precise value will not become fixed, if it ever does, until some future date is irrelevant. The trial court had enough information in this case to make an equitable division of the benefits, whether by the plaintiffs suggested coverture fraction or some other appropriate method.
{¶ 16} The trial court and the court of appeals were mistaken in concluding that the defendant’s unvested military pension was not a divisible asset. This record, although sparse, is sufficient to demonstrate that the plaintiff was entitled to share in the sole remaining asset that was earned during the marriage. The trial court erred as a matter of law, and as a result, its division of property was inequitable and an abuse of discretion.
CONCLUSION
{¶ 17} Unvested military retirement benefits earned during marriage fall within the definition of marital property in R.C. 3105.171(A)(3)(a) and must be considered for division under R.C. 3105.171(C). We reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings.
Judgment reversed and cause remanded.
Pfeifer, Kennedy, and French, JJ., concur.
O’Connor, C.J., and O’Donnell and Lanzinger, JJ., dissent.

. We recognize that a qualified domestic-relations order is a device specifically designed for assigning benefits to a nonparticipant spouse under the federal Employment Retirement Income *278 Security Act, 29 U.S.C. 1001 et seq., and that such an order is not applicable to a nonprivate pension. But it may provide a useful model.